ADAM MARSZALKOWSKI *vs.* CATHERINE RUSAKOVICH.

JUNE 29, 1956.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

CONDON, J. This is a petition for compensation for a specified injury as provided by article II, sec. 12 (d) of the workmen's compensation act, public laws 1954, chapter 3297. The case is here on the respondent's appeal from a decree of the workmen's compensation commission granting the petition.

The petitioner sustained an injury to his right eye arising out of and in the course of his employment. In his petition he alleged that his vision in that eye had been thereby reduced to one-tenth or less of normal vision. Section 12 provides that compensation in addition to all other compensation shall be paid for certain specified injuries including "(d) For the entire and irrecoverable loss of sight of either eye, or the reduction to one-tenth or less of normal vision with glasses * * * ." The same section also provides: "(a)

\* \* \* that for the purpose of this article the Snellen chart reading 20/200 shall equal one-tenth of normal vision \* \* \* ."

At the original hearing before a single commissioner evidence of the extent of petitioner's loss of vision in his right eye was given by two ophthalmologists, Dr. Raymond Hacking and Dr. Morris Botvin. Each examined petitioner and filed a report of such examination which was admitted in evidence. Each also personally appeared and testified at the hearing.

Doctor Hacking reported that he examined petitioner on July 19, 1954 and found that he had a dilated and fixed pupil in his right eye. He expressed the opinion that this condition was due to trauma and that he believed it was permanent. He further stated in his report that he found 20/200 vision in the right eye and that it was corrected by glasses to 20/125. On the witness stand he expressed the opinion that such vision would not grow worse and that he could provide petitioner with suitable glasses which would give him more than one tenth of normal vision.

In his report Dr. Botvin stated that he examined petitioner on October 25, 1954 and found the following condition of his right eye: "Partial paralysis of the iris sphincter. Partial traumatic cataract. Degeneration of the macular area of the retina — mild." He further stated that such findings were traumatic in origin. He also found that the vision in the right eye was 20/400 and "not correctible to 20/200 with a glass." On cross-examination by respondent it appeared that Dr. Botvin did not use a Snellen chart in examining petitioner but a projector chart. The doctor testified that this method was more reliable, that it employed letters of the same size as on the Snellen chart, and that they were projected on an illuminated screen. He added: "To all intents and purposes, visual acuity obtained with this thing is the same, when the illumination and card

is clean, etc. It's still vision according to Snellen, except I don't use a Snellen chart * * * ."

The single commissioner, over respondent's objection, adopted this view and held that such an examination complied with the intent of the statute. In his decision for petitioner he reiterated such view and relied upon Dr. Botvin's report and testimony rather than on Dr. Hacking's. In the decree which he entered based on such decision he expressly found as a fact that petitioner's "injury to his eye has reduced his vision to 1/10th or less of normal vision with glasses" and awarded him compensation therefor in accordance with the statute.

The respondent appealed from that decree to the full commission and filed the following six reasons therefor: That the commissioner's decision is (1) against the law; (2) against the evidence; (3) against the law and the evidence and the weight thereof; (4) against the weight of the medical evidence; (5) without basis in fact; and (6) that the decree does not specify the obligation of respond-ent. Pursuant to art. III, sec. 3 (g), the full commission reviewed the decree "upon the record of the case" and filed a decision in which they found that the decree was in error in that it did not specify the maximum amount allowed under the act, but otherwise they agreed with the finding as to petitioner's reduced vision. In accordance with such decision they entered their own decree which "finds as a fact that the employee's injury to his eye has reduced his vision to one-tenth or less of normal vision with glasses," and they ordered respondent to pay him specific compensation at the rate of one half his average weekly earnings but not to exceed the statutory maximum of $20 for a period of 120 weeks.

From the decree of the full commission respondent appealed to this court and filed the following reasons therefor: (1) To the admission of the testimony of Dr. Botvin; (2) to the conclusion of the commissioner that art. II, sec.

12 (a) does not require Snellen chart readings to measure visual acuity; (3) to the commissioner's relying upon matters not properly in evidence as a basis for his decision; (4) that the decision is against the law; (5) that it is against the evidence; (6) that it is against the law and the evidence and the weight thereof; (7) that it is against the weight of the medical evidence; (8) that it is without any basis in fact; and (9) that the decree is contrary to law and equity.

The first three reasons of appeal are directed at alleged erroneous actions of the single commissioner at the hearing before him and do not appear among the reasons of appeal to the full commission. Since they were not presented for review there we will not consider them here. In *Brown & Sharpe Mfg. Co.* v. *Lavoie*, 83 R. I. 335, 339, 116 A.2d 181, 183, we held: "On an appeal from the decree of a single commissioner as affirmed by the full commission we will review only those matters which were brought by specific reasons of appeal to the full commission."

Reasons of appeal numbered 4, 5, 6, 7 and 8 are directed at the *decision* of the single commissioner. They should be directed at the *decree* of the full commission. We shall assume that the respondent so intended. Reasons 5 and 7 and that portion of reason 6 which refers to the weight of the evidence are not valid reasons of appeal and will therefore be disregarded, since we do not weigh the evidence in considering appeals from the full commission. *Brown & Sharpe Mfg. Co.* v. *Lavoie, supra*. Reasons of appeal 4 and 9 and the portion of reason 6 which refers to the law each raise the same objection, namely, that the decree is against the law. Hence they will be considered together. Reason 8 is the equivalent of a contention that there is no legal evidence to support the decree and will be so treated.

The respondent contends that the decree is without any legal evidence or factual basis, because there is no finding that petitioner's loss of vision is irrecoverable and no legal

evidence that could support such a finding. It is true that there is no explicit finding in the full commission's decree that petitioner's reduced vision is permanent, but we think it is implicit in their finding of fact that his vision was reduced to the extent required by the statute to warrant their award of specific compensation. In the circumstances we do not think that the omission of an express finding is fatal to the decree as contended under the eighth reason of appeal.

We agree with respondent that the loss in visual acuity caused by the injury which left the vision in petitioner's right eye reduced to one tenth or less of normal vision with glasses must be shown to be irrecoverable. That is to say, there must be some evidence to prove that the injury to the eye which caused the reduced visual acuity is permanent. There is such evidence in the record here. Doctor Hacking in his written report stated that he believed the injury to the right eye was permanent, and on the witness stand at the hearing before the single commissioner he testified to the same effect. Therefore we cannot say that on the record for review before the full commission there was no evidence to support their finding, even though the statute requires that the specified loss of vision must be permanent in order to be compensable.

In our opinion the real question in this case is whether there is legal evidence to support the finding that the reduced vision in petitioner's right eye cannot be corrected with glasses to better than 20/200 as measured by the Snellen chart. Doctor Hacking and Dr. Botvin agree that without glasses petitioner's vision is equal to one tenth of normal or less, but they disagree as to whether such reduced vision can be corrected with glasses. Doctor Hacking testified positively that it could and Dr. Botvin with equal positiveness that it could not. There is no other evidence on the point. Ordinarily on the face of such a record there would be no room for a contention that there was no legal

evidence to support the decree. Doctor Botvin's evidence would be sufficient. But here respondent makes the claim that such evidence is illegal and without it there is no evidence on which the commission could base their decree.

We shall consider this contention under respondent's reasons of appeal 4 and 9 that the decree is against the law. We think such contention may be properly considered under that head, because in essence it raises the question whether the statute requires the use of the Snellen chart in the customary way it has been used to measure visual acuity and absolutely excludes any other method even though such method is based solely on the standards of the Snellen chart. In other words if the statute is to be thus strictly construed, petitioner has not presented any medical evidence to prove the irremediable nature of his reduced vision because Dr. Botvin admittedly did not use the Snellen chart in the customary manner.

We have given respondent's contention careful consideration. It raises an important question. If her view is sound it will preclude ophthalmologists in workmen's compensation cases of eye injury from employing new methods based on Snellen chart standards for measuring visual acuity even though the medical profession may deem such methods more accurate. On the other hand the statute expressly provides that "the Snellen chart reading 20/200 shall equal one-tenth of normal vision * * *." Unquestionably the Snellen chart standards are thus made an integral part of the statute. We can say without hesitancy that no other standards may be used to determine such vision. We cannot say, however, that the legislature intended to also make the customary way of employing such standards in testing a patient's vision a part of the statute. In the absence of express language, that point is necessarily left to the judicial construction of the statute.

In construing the statute we are bound by its express terms to hold that no construction is sound which dispenses

in whole or in part with Snellen chart standards. It is clear from Dr. Botvin's testimony hereinbefore referred to that the method which he used does not depart in any degree from those standards. On the contrary he testified that the visual acuity obtained by such method was the same as that obtained from a Snellen chart when the card and illumination were clean. His testimony on that point is undisputed. In view of such testimony we are of the opinion that Dr. Botvin's method was substantially based on the standards of the Snellen chart and represented compliance with the statute. That is to say, it is our opinion that the statute was not intended to require the use of the Snellen chart in any particular manner so long as the method used involved the standards of such chart.

On this view of the statute there is no merit in respondent's contention, under her reasons of appeal 4 and 9 and a portion of reason 6, that the decree is against the law. Since the decree is based on some legal evidence to support the commission's finding of fact and is not contrary to law, their decree awarding petitioner compensation for the specific injury found by them cannot be set aside. However, there is one aspect of it which should be clarified. In the finding of fact the particular eye which has reduced vision is not identified. The evidence shows that it is the right eye and therefore the decree should correspond precisely to such proof. The decree should be corrected accordingly.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed subject to the correction above mentioned, and the cause is remanded to the workmen's compensation commission for such purpose and for further proceedings.

*Irving I. Zimmerman,* for petitioner.

*Francis V. Reynolds, Richard P. McMahon,* for respondent.