FRANK GOBEILLE *vs.* RAY'S INC. AND BANKERS INDEMNITY INS. CO.

JULY 2, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

208

FLYNN, C. J.  This cause is before us on the appeals of the respondent Bankers Indemnity Insurance Company from two decrees of the superior court, adjudging that respondent in contempt for certain failure to make payments in accordance with a preliminary agreement entered into between the employer and employee, under the workmen's compensation act, general laws 1938, chapter 300.  The petitioner was the employee of the respondent Ray's Inc., hereinafter called the employer; and the Bankers Indemnity Insurance Company was the employer's insurer under the act.

The following are some of the undisputed facts that are material here.  On July 27, 1935, the employee suffered an injury to his knee arising out of and in the course of his employment, and on October 12, 1935 a preliminary agreement was entered into between the employer, the insurer and the employee.  This agreement provided for compensation at the rate of $8 per week to be paid to the injured employee for duration of his total disability, and was duly approved by the director of labor in accordance with the provisions of the workmen's compensation act.  By a later decree of the court, the preliminary agreement was modified so as to provide for weekly payments of $7.20 instead of $8.  The preliminary agreement as so modified will be referred to as "the agreement".  Thereafter, a petition was filed by the employer seeking to discontinue compensation payments under this agreement on the ground that the employee's total disability had ceased, and eventually a decree was entered thereon in the superior court on April 8, 1936,

finding as a fact that the injured party had not recovered from his total disability and therefore denying the petition.

On July 25, 1938, another petition to review the agreement was filed by the employer with the director of labor, who denied it. The employer appealed therefrom to the superior court and, after a hearing thereon, a decree was entered on October 26, 1938, finding that the employee's total disability had not ended or diminished, and therefore denying the appeal.

On August 21, 1939, the employer Ray's Inc. was dissolved by a decree of the superior court without notice to the employee. Later the employee voluntarily, at the request of the insurer and at its expense, went to New York and submitted to a further medical examination, following which the insurer ceased payments under the agreement and notified him in writing, on December 23, 1939, that it refused to make any further payments of compensation thereunder. No supplemental agreement, or other order or decree of the director of labor or of the court, modifying the terms of the agreement except as stated, had been made; and from and after December 25, 1939 to the date of the decree no compensation was paid by the insurer to the employee as required by that agreement.

On January 5, 1940, the injured employee filed in the superior court, under the provisions of art. III, § 1 of the workmen's compensation act, a petition to have the insurer adjudged in contempt for its willful failure or neglect to make compensation payments in obedience to the terms of the agreement. After a hearing by a justice of that court, a decree was entered, on January 24, 1940, adjudging the insurer in contempt of that agreement and allowing it to purge itself by paying the weekly compensation payments due under the agreement as modified, "and the costs of this proceeding in the sum of $3.70, and a counsel fee in the amount of $50." The insurer duly filed its claim and rea-

sons of appeal from this decree and this is the *first* appeal before us.

After the insurer had filed its claim of appeal, the employee brought, on January 30, 1940, a "supplementary petition" to adjudge the insurer in contempt. This petition was based upon the same facts and law as was the first petition, excepting that one additional week had elapsed from the date of the decree entered on the first petition, without payment by the insurer of any further compensation to the employee. In the superior court the insurer's motions to dismiss and to enjoin prosecution of this "supplementary petition" were denied; a hearing was held thereon, and a decree was entered on February 13, 1940, adjudging the insurer to be in contempt of the agreement and allowing it to purge itself by payment of $3.60 costs, "and a counsel fee in the amount of One Hundred Fifty ($150.00) Dollars." The insurer duly filed its claim and reasons of appeal from this decree, which is the *second* appeal before us.

The insurer contends that the trial justice erred as a matter of law because: First, the finding in each case that the respondent was guilty of contempt is entirely without legal evidence to support it; second, the burden of proof was upon the employee to prove contempt beyond a reasonable doubt; third, the respondent was erroneously ordered to pay counsel fee in each case; and fourth, the court erred in several rulings as set out in the reasons of appeal.

The first contention is based upon the alleged error of the trial justice in refusing to consider and determine whether the employee was, in fact, totally disabled, when compensation payments due under the agreement were stopped by the insurer. In support of that contention it argues that the agreement, entered into between the employer, the insurer and the employee, was approved by the director of labor in accordance with the workmen's compensation act and, therefore, must be held to conform to

the law; that such agreement provided that compensation for the employee's injury be payable "for duration of total incapacity thereafter or until otherwise terminated in accordance with the provisions of the 'Workmen's Compensation Act' of the State of Rhode Island"; that such language should be interpreted literally and, if so construed, the insurer was entitled to cease payments upon its own initiative whenever it determined, on reasonable grounds, that the employee's disability had ended, being subject only to possible action by the employee as in the case of an alleged breach of ordinary contract; that nothing in the agreement provides that the stopping of payments, when the employee's disability has in fact ceased, is a violation of its terms; and that, in practice, any other construction, that would require the insurer to file a petition for review of the agreement before warranting cessation of payments thereunder, would lead to unnecessary hardship, because of the alleged delay in receiving decisions on such petitions from the office of the director of labor.

We are of the opinion that the first point and these contentions of the insurer must be rejected on the ground that they are either inconsistent with certain provisions of the workmen's compensation act or that they would substantially nullify other provisions as well as defeat the purpose of that act. The essence of this point, and its supporting arguments, is based on the conception that the agreement between an employer and an injured employee under the workmen's compensation act is a simple contract to be interpreted apart from the act and virtually in accordance with the law governing ordinary contracts. But in our very recent opinion in *Carpenter* v. *Globe Indemnity Co.*, 65 R. I., 194, we considered not only the identical language in such an agreement but also substantially the same contentions as are made here.

Everything that we held as the law governing compensation agreements in that cause is applicable here with even

greater force. In the instant cause the insurer determined for itself the question of the employee's continuing disability, after the superior court had twice previously determined that the employee's total disability was not ended or diminished. In doing so, the insurer took the risk of being subjected to proceedings under the act by the employee to enforce his rights according to the agreement. As we held in the *Carpenter* case, the correct method, as provided by the act, to raise the question of the employee's continuing disability is by a petition to review filed, in the first instance, with the director of labor and not in the superior court. Such question is not left by the act to the employer to determine for itself nor to the employee to waive. Therefore, the agreement remained in full force and effect until properly altered or ended in accordance with the provisions of the act. No petition to review the agreement was filed and no supplemental agreement, approved by the director of labor, was entered under the act to determine whether the employee's disability had in fact ceased.

Therefore, the question whether the employee's total disability had ceased at the time payments were stopped was not properly before the superior court on this petition; and the only issue for the court to consider and determine was the alleged "willful failure or neglect" of the insurer to obey the terms of the agreement, which was equivalent to a decree so far as its enforcement was concerned. *Carpenter* v. *Globe Indemnity Co., supra.*

To sustain the insurer's contention would also permit the employer or insurer, on their own initiative and judgment and without the approval of the director of labor or the superior court, to do in effect what is expressly prohibited by the provisions of the workmen's compensation act. General laws 1938, chap. 300, art. III, § 13, provides: "At any time after the date of the approval of an agreement or the entry of a decree fixing compensation . . . any agreement,

award, findings or decree, may be from time to time reviewed by the director of labor upon the application of either party. . . . Upon such review the director of labor may increase, diminish, or discontinue the compensation from the date of the entry of the decree in accordance with the facts, or make such other order as the justice of the case may require, *but shall order no change of the status existing prior to the entry of the decree."* (italics ours)

If the insurer, without approval of the director or court, could cease payments *before* the fact of the employee's continuing disability was heard and decided in its favor by the agency expressly designated under the act, it would result, in effect, in a retroactive change in the employee's status prior to the entry of the decree. Even the director of labor is specifically prohibited by the above-quoted provisions of the act from such action after a proper hearing; and *a fortiori* the insurer cannot do so solely on its own initiative and judgment as to that fact.

The insurer further contends under its first point that, in practice, it would suffer great hardship if required to file a petition for review *before* being entitled to cease payments under an agreement, because of the alleged delay in obtaining decisions from the director of labor's office. This contention is plainly addressed to policy, expediency, or administration with which we are not concerned on this petition.

The insurer's second point is based on the contention that the burden was on the employee to prove all of the material allegations of his petition; that this petition alleges expressly that the employee was not able to work and was totally disabled at the time payments were stopped by the insurer; and that such allegation must be established beyond a reasonable doubt. We can agree with the first part of this contention, namely, that the employee must prove all of the *material* allegations of a petition to have the insurer adjudged in contempt; but the answer thereto in this cause

is that the allegation of the petition, to the effect that the employee was in fact totally disabled at the time in question, was not a necessary and material one to support this petition. That issue, as held in the *Carpenter* case, *supra,* and as above stated, was not before the superior court for determination upon a petition to enforce an agreement or decree; and such allegation therefore must be treated as mere surplusage.

The other essential allegations of a petition to adjudge in contempt under this section of the act were alleged and amply proved or admitted by the evidence. We need not consider the *quantum* of proof necessary to establish such a petition because the material facts in this cause, according to our view of the agreement and act, are not disputed and are beyond any reasonable doubt, so that the maximum of proof contended for by the insurer was met in any event.

The insurer's third contention is that the court, in ordering the insurer to pay counsel fees, erred because their allowance is prohibited by chap. 300, art. III, § 6. The portion thereof relied on reads: "The superior court may award as costs the actual expenditures, or such part thereof as the court shall deem meet, but not including counsel fees, and shall include such costs in its decree." The insurer interprets this language literally and that is a possible construction, particularly if it were an ordinary case of contempt. But this is a petition that is provided for expressly by the workmen's compensation act; and we have held that such act is a remedial statute and must be construed liberally, as a whole, in order to better effectuate its purpose. *Condon* v. *First National Stores,* 65 R. I. 129, and cases cited. But, in the instant cause, the insurer's interpretation is neither the only construction nor the liberal one; and it would defeat other express provisions of the act.

In our opinion this prohibition against awarding counsel fees *as costs,* as stated in § 6, was intended to be read with

the first part of the same paragraph. So read, it contemplates the exclusion of counsel fees from allowance *as costs* in the ordinary appeals that may be certified from the director of labor to the superior court. Such appeals are the subject-matter of the first part of the paragraph. In our opinion it was not intended to so limit the power, ordinarily inherent in the court upon a contempt proceeding, to enforce thereby agreements or decrees under the act.

To adopt the insurer's interpretation would result substantially in rendering ineffective the very powers the act expressly granted to the court to enforce agreements and decrees thereunder. Moreover, it would also deprive the employee, in effect, at least of part of the very compensation which had been established and awarded to him, because the most usual and necessary expense to him would be required for counsel fees in order to present the matter to the court. Such a construction would certainly be inconsistent with the provision of the workmen's compensation act which authorizes the superior court to "prescribe forms and make suitable orders . . . adapted to secure a speedy, efficient and inexpensive disposition of all proceedings" under the act. Chapter 300, art. III, § 14. We think the insurer fails to give full effect to the entire context and overlooks the effect of its construction upon the other salutary provisions of the workmen's compensation act, which we are obliged to make effective, if reasonably possible, under a liberal interpretation of the whole act. Since the evidence shows clearly that the assistance of counsel was reasonably necessary to the employee, and the award of $50 as counsel fee was not excessive, we are of the opinion that there was no error in this regard.

The insurer's fourth point relates to the rulings connected with the questions of the employee's physical disability or his financial status as bearing on allowance of counsel fees. In view of our consideration and determination of the other

fundamental points in the insurer's reasons of appeal, it becomes unnecessary for us to consider these grounds individually. In our opinion, therefore, the decision of the trial justice upon the first petition must be sustained.

The second appeal presents a somewhat different question. The only material difference between the "supplementary petition" and the former one was the fact that one more week had elapsed during which no payment had been made to the employee in accordance with the agreement. The law, as determined on appeal from the first decree, would necessarily be determinative of the question of future payments until the agreement was properly altered or ended. Under the existing circumstances, we think the trial justice would have been justified in postponing action thereon until the controlling issue of law was decided upon the first appeal. Indeed, it is not without question whether in the circumstances this petition was reasonably necessary in order to obtain adequate protection of the employee's rights under the agreement and to enforce the act. However, we are unwilling to say at this time that the court was without any jurisdiction. The matter was probably one addressed to the sound discretion of the court, in view of all the circumstances then before it.

If the trial justice found, as he did, that $50 for counsel fee was adequate to insure the employee's protection according to the first decree, the appeal from which presented the controlling issue of law in the cause, then we are constrained to hold that any allowance in the second decree in excess thereof, which necessarily was governed by that determination of law, was error. It would not then be reasonably necessary for the adequate protection of the rights of the employee and the enforcement of the act. Therefore we think that the insurer's appeal from the second decree must be sustained to the extent that the allowance for counsel fee in the second decree in excess of $50 is erroneous.

For the reasons stated, the appeal from the decree of January 24, 1940 is denied, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings. The appeal from the decree of February 13, 1940 is sustained in part; and the decree appealed from is modified to allow a counsel fee of only $50 instead of $150, and as so modified, is affirmed, and the cause is remanded to the superior court for further proceedings.

*Greenough, Lyman & Cross, Harvey S. Reynolds,* for petitioner.

*Fergus J. McOsker,* for respondent.